In the Matter of the Application of the WAREHOUSEMEN'S ASSOCIATION OF THE PORT OF NEW YORK, INC., Respondent, for a Writ of Mandamus against MICHAEL COSGROVE, as Commissioner of Docks of the City of New York, Appellant.

NEW YORK CENTRAL RAILROAD COMPANY and Others, Appellants.

First Department, January 10, 1930.

*Frederick H. Wood* of counsel [*E. Gardner Prime* with him on the brief; *Arthur J. W. Hilly, Corporation Counsel,* for Michael Cosgrove, as Commissioner of Docks of the City of New York; *Cravath, deGersdorff, Swaine & Wood,* attorneys for The Baltimore and Ohio Railroad Company; *Herbert W. Smith,* for the Lehigh Valley Railroad Company; *Alex. S. Lyman,* for the New York Central Railroad Company], for the appellants.

*Charles J. Nehrbas* of counsel [*Moses, Nehrbas & Tyler,* attorneys], for the respondent.

McAvoy, J. The Warehousemen's Association of the Port of New York, Inc., petitioned for a mandamus order running to the commissioner of docks of the city of New York, which would require him to perform his alleged duty to prevent three railroad companies from using certain piers leased to them on the North and East rivers, in the borough of Manhattan, for warehouse or storage purposes, and which would require the commissioner of docks to cause merchandise unlawfully stored on such piers to be removed.

The three railroad companies were made parties defendants to the proceeding at their request, and opposed petitioner's motion. The commissioner of docks also submitted opposing affidavits.

The court at Special Term held that the piers were being illegally used, but that, in his discretion, he would permit goods awaiting delivery to be held on the pier for not more than fifteen days. He called the use illegal because it incumbered and interfered with the free use of the piers, and was thus violative of the law.

Although petitioner's basis of moving in this proceeding was under section 846 of the Greater New York Charter (Laws of 1901, chap. 466, as amd. by Laws of 1904, chap. 455), it was found by the court at Special Term that the action of the railroad companies in storing the merchandise in question, or in retaining the merchandise in question on their piers, might not be in violation of that section. The precise nature of the statute, ordinance or

local law which was infringed was not indicated in the court's opinion.

As the petitioner would not be entitled to a peremptory mandamus order, unless as a matter of law it was entitled to this relief, and only in so far as admitted by defendants can petitioner's affidavit be deemed true, we think that it was erroneous to hold on the proof here that the defendant railroad companies had incumbered the piers in question and interfered with their free use in an illegal manner.

We find, too, that petitioner has not shown either that there is some public interest which is adversely affected by the use made by the defendants of the piers, or that petitioner has some special interest which it is endeavoring to promote by this proceeding. Hence, its capacity to sue here as a person specially affected based as it is upon an endeavor to divert a portion of the business of warehousing into premises of the members of the petitioning association, cannot be considered sufficiently established to clothe the petitioner with the right to bring this proceeding.

The court at Special Term relied upon *Matter of Warehousemen's Assn. of the Port of New York, Inc.*, v. *Cosgrove* (241 N. Y. 580) as its authority for a holding that the use of the piers for storage or warehouse purposes incumbered them and interfered with their free use. But this holding was not the conclusion arrived at by the Court of Appeals, as evidenced by its language (at p. 581): " Physically, the use [storage on piers] does not incumber the pier or interfere with its free use." In that instance on the piers in question the lessees stored sugar on the upper deck of the piers and no part was maintained on the ground floor of the piers; and, as the piers were leased by the city to the lessees for their exclusive use, it could not well have been claimed that the lessees could impede their own use of their own leased piers. (N. Y. L. J. June 8, 1925, p. 979.) Neither can the order of mandamus be considered valid on the theory that the use of the piers complained of violates section 846 of the Greater New York Charter. This section prohibits the erection or maintenance on any pier of any structure other than certain sheds expressly permitted by section 844 of that charter, and certain sheds for the wholesale fish trade, which are not here material. These sections are obviously so similar in context and situate in position in the statute that they ought to be read as in *pari materia*. Section 844 (as amd. by Laws of 1921, chap. 611) permits any steam transportation company to erect on any pier in the city of New York which it leases and uses for the purpose of regularly receiving and discharging cargo, sheds for the protection of the property so received or discharged. The dock

commissioner is therein given power to erect such sheds on city-owned piers, and to lease them; and the lessees are granted the rights and privileges which owners or lessees have, who erect piers on the bulkheads for their own use.

Neither section in any way limits the use of piers. Section 846, as indicated, prohibits the erection or maintenance of store-houses, booths, shops or other structures than sheds. Section 844 expressly gives the right to erect and maintain sheds for the protection of cargo received or discharged at the pier. This use was that which the defendant railroad companies, which leased the piers, were making of their leaseholds at the commencement of this proceeding. There is no limitation in section 844 with respect to the time within which merchandise must be discharged from the piers. Nor is there any evidence in the record that cargo was held thereon in any instance for more than sixty days; and the only merchandise which these companies kept in the sheds is that which was transported to or was about to depart over their lines. The goods are not kept as were the goods in *Warehousemen's Assn.* v. *Cosgrove* (*supra*) in a Federal bonded warehouse maintained on the city pier; nor are goods indiscriminately stored for an indefinite length of time. The goods are held on these piers pending reshipment, delivery or public sale. In the cited case the transportation had been completely halted, and the goods were " in storage." Here the merchandise is held during the implied continuance of transportation. The storage business in the former case bore no relation to the transportation of the goods which were stored. Here the companies are all engaged in the transportation business, and, as integral part of their public duty thereunder, merchandise is temporarily held by these carriers for the convenience of the shipper, or the consignee. The merchandise here is still " in transit," for concededly it has not been delivered to the consignee. Nor do we think that an order of mandamus in a case of this kind is an appropriate remedy " to compel a general course of official conduct or a long series of continuous acts, as it is impossible for the court to oversee the performance of such duties." (*People ex rel. Lehmaier* v. *Interurban St. R. Co.*, 177 N. Y. 301.) The enforcement of this mandate would be quite impracticable.

The orders should not have been granted, and should be reversed, with ten dollars costs and disbursements, and the motion denied, with fifty dollars costs.

DOWLING, P. J., MARTIN and O'MALLEY, JJ., concur.

Orders reversed, with ten dollars costs and disbursements, and motion denied, with fifty dollars costs.